UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL A. BACON,<br><br>Plaintiff,<br><br>v.<br><br>TODD R. WILCOX et al.<br><br>Defendants. | **MEMORANDUM DECISION<br>& ORDER GRANTING SUMMARY-<br>JUDGMENT MOTION**<br><br>Case No. 2:15-cv-145 TS<br><br>District Judge Ted Stewart |

Plaintiff, Michael A. Bacon, brings civil-rights claims against Salt Lake County (SLC) defendants, Todd Wilcox, Brad Lewis, Eric Lindley, Patrick Gee, and Darren Backman. *See* 42 U.S.C.S. § 1983 (2019). He argues these defendants violated his federal Eighth Amendment rights by causing him injury, then providing him inadequate medical care. (Doc. No. 31.)

Defendants filed a *Martinez* report, (Doc. No. 68), including these documents: (1) declarations of Defendants and other relevant SLC staff; (2) medical records; and (3) jail records, including grievances, (Doc. Nos. 69-1, 69-2, 69-3 & 91). Based on the *Martinez* report, Defendants move for summary judgment. (Doc. No. 72.) Plaintiff replies--his only evidence being the sworn statements in his amended complaint. (Doc. Nos. 31 & 85.) The Court rules for Defendants.

**SUMMARY-JUDGMENT STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1)(A). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

To notify him of his duty in responding to a summary-judgment motion, the Court twice provided Plaintiff with the full text of Federal Rule of Civil Procedure 56 and District of Utah Local Rule 56-1. (Doc. Nos. 40, at 5-8, & 61, at 5-8.)

## UNDISPUTED MATERIAL FACTS

• During relevant time period, Plaintiff was SLC inmate. (Doc. No. 31, at 3.)

• During relevant time, Defendant Wilcox was medical doctor under contract to provide services at SLC Jail (Jail). (Doc. No. 68-3, at 2.)

• During relevant time, Defendants Lewis and Lindley were doctors who treated Plaintiff at Jail. (*Id.*)

• During relevant time, Defendant Gee was registered nurse (RN) at Jail. (Doc. No. 68-2.)

• During relevant time, Defendant Backman was SLC Corrections Officer. (Doc. No. 68-1, at 2.)

• 8/14/14-2/9/15 - Plaintiff prescribed Neurontin. (Doc. No. 69-2, at 2.)

• 12/15/14-1/23/15 - Plaintiff prescribed "IBUPROFEN 800MG TABS." (Doc. No. 69-2, at 2.)

• 12/18/14 - Plaintiff injured knee when stepping on cup that Defendant Backman intentionally placed on stair trying to "catch a certain inmate" (not Plaintiff). (Doc. Nos. 31, at 3, 6, 7; 68-1, at 2, 4.) Defendant Gee "looked at Plaintiff's knee[,] did not touch it or examine it & indicated nothing was wrong & wouldn't refer the injury to a doctor." (Doc. No. 31, at 7.) Defendant Gee "did not evaluate Mr. Bacon on December 18, 2014." (Doc. No. 68-2, at 2.) Within about five minutes of injury, "Medical called. OIC Guzman notified." (Doc. No. 91, "Jail Divisions Officers Shift Log for 12/18/14.) Within about forty minutes of injury, Plaintiff seen by RN Patrick Knight, who did medical evaluation, after which reported Plaintiff "ambulated without assistance, was full weight bearing and full [range of motion] was noted" and had "no obvious deformity, no inflammation," with pain of seven out of ten, and was later seen returning to his cell without limping; "Prisoner Bacon cleared to remain in the unit." (Doc. No. 69-1, at 2; Doc. No. 91, "Jail Divisions Officers Shift Log for 12/18/14.) Knight told Plaintiff to report "any worsening of symptoms. (*Id.*) Plaintiff filled out "Sick Call Request Form." (Doc. No. 69-1, at 1.)

• 12/19/14 - Plaintiff "put in to be seen by a doctor for the pain & having trouble walking." (Doc. No. 31, at 8.) Plaintiff evaluated by triage nurse who scheduled Plaintiff to see doctor. (Doc. No. 69-1, at 1.)

• 1/2/15 - Plaintiff saw Defendant Lewis "who noted a limp & knee sprain but told Plaintiff he could not provide any medical care." (Doc. No. 31, at 8.) Defendant Lewis "ordered an x-ray which was unremarkable." (Doc. Nos. 68-3, at 2, & 69-2, at 3.) As requested by Plaintiff, Defendant Lewis gave him "pink slip for a bottom bunk/bottom tier until roll up." (Doc. No. 69-1, at 3, & 69-2, at 3.) Defendant Lewis noted Plaintiff already had prescriptions for ibuprofen and Neurontin for pain. (Doc. No. 69-1, at 3.) Defendant Lewis stated, "The patient can follow up as needed or if signs or symptoms persist, change or worsen." (Doc. No. 69-1, at 3.)

• 1/6/15 - Dr. Benjamin Huang reported about Plaintiff's knee x-ray: "The knee joint is intact. No fracture or dislocation is seen. No suprapatellar joint effusion is seen." (Doc. No. 69-1, at 4.)

• 1/10/15 - Plaintiff requested follow-up medical treatment. (Doc. Nos. 31, at 9, & 69-1, at 5.)

3

- 1/11/15 - Triage nurse evaluated Plaintiff, noting Plaintiff's gait was "stable" and Plaintiff asked to "discuss treatment plan." (Doc. No. 69-1, at 5.)

- 1/14/15 - Plaintiff requested medical treatment for injured knee. (Doc. Nos. 31, at 9, & 69-1, at 6.)

- 1/15/15 - Triage nurse evaluated knee, indicating "Dr Call" as disposition. (Doc. No. 69-1, at 6.)

- 1/23/15 - Defendant Lindley saw Plaintiff for "chronic knee pain," agreeing to switch him "to tramadol and discontinue his ibuprofen." (Doc. No. 69-1, at 8.)

- 1/23-3/14/15 - Plaintiff prescribed tramadol. (Doc. No. 69-2, at 2.)

- 2/4/15 - Plaintiff requested medical treatment for injured knee. (Doc. No. 69-1, at 9.) Since February 4, 2015, Plaintiff "never again mentioned or complained to a medical doctor about left knee pain." (Doc. No. 68-3, at 2.)

- 2/6/15 - Plaintiff was seen by Defendant Lindley, who prescribed Tramadol for pain. (Doc. Nos. 31, at 9, & 69-2, at 9.)

- 2/10/15 - Triage nurse evaluated Plaintiff, noting zero swelling and deformity and that Plaintiff said Tramadol was "not enough." (Doc. No. 69-1, at 9.) Plaintiff scheduled to see doctor. (*Id.*)

- 3/4/15 - Original federal civil-rights complaint submitted.

- 2/28-3/5/15 - Plaintiff prescribed "IBUPROFEN 800MG TABS." No mention of left knee pain associated with this prescription. (Doc. No. 69-2, at 2.)

- 3/14/15 - Medical appointment with Defendant Lindley for chronic shoulder and ankle pain; tramadol dosage doubled. No mention of left knee pain here. (Doc. No. 69-2, at 9, 38.)

- 4/20/15, Defendant Wilcox revoked Plaintiff's Tramadol prescription and gave him ibuprofen. No mention of left knee pain on this visit. (Doc. No. 31, at 10-11.)

- 7/1/15 – Plaintiff released from Jail to Utah State Prison. (Doc. No. 91, Inmate Housing History, booking date 3/28/14; Prisoner Request for Grievance Exhaustion Letter, dated 10/19/15)

- 3/20/16 - Amended Complaint signed. (Doc. No. 31.)

# ANALYSIS

## I. LACK OF AFFIRMATIVE LINK

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants--"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id*. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id*.

Under these guidelines, the Court concludes Plaintiff has not affirmatively linked Defendant Gee to his claim. He simply names Defendant "Patrick Gee" and states Patrick Gee did nothing to help.

First, there is a hint in the record that Plaintiff identified the wrong RN, named "Patrick." After all, it was *RN Patrick Knight* who did the evaluation within moments of the injury. (Doc. No. 69-1, at 2; Doc. No. 91, "Jail Divisions Officers Shift Log for 12/18/14.)

Still, Plaintiff's factual assertion that Defendant Gee "just looked at Plaintiff's knee[,] did not touch it or examine it & indicated nothing was wrong & wouldn't refer the injury to a doctor," (Doc. No. 31, at 7), is not at odds with Defendant Gee's sworn statement that he "did not evaluate Mr. Bacon on December 18, 2014," (Doc. No. 68-2, at 2). That would apparently be because either Defendant Gee was not there (wrong Patrick) or there was no need--undisputedly, RN Patrick Knight was right there, taking care of things. Plaintiff's claims against this defendant therefore may not survive further. And Defendant Gee is dismissed.

## II. UNSAFE CONDITIONS

Plaintiff contends Defendant Backman violated the Eight Amendment's prohibition on cruel and unusual treatment by putting a cup on a step to "catch" a different inmate. Accepted as an undisputed fact, Plaintiff stepped on the cup, which caused him to twist and hurt his left knee.

> [F]or a plaintiff to succeed on a § 1983 claim in violation of the Eighth Amendment, he must show: 1) the deprivation is "sufficiently serious," and 2) the prison officials acted with "deliberate indifference" to the inmate's health and safety. *Penrod v. Zavaras*, 94 F.3d 1399, 1405-06 (10th Cir. 1996). Liability for "deliberate indifference" requires a prison official to: 1) be aware of the facts from which an inference can be drawn that a substantial risk of serious harm exists; and 2) draw such an inference. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). Thus, to survive summary judgment, a prisoner must show

6

> the named prison official possessed the requisite personal participation or knowledge, *see Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993), and acted with "deliberate indifference" to his health or safety. *Penrod*, 94 F.3d at 1405-06. Although prisoners must receive humane conditions of confinement, mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994).

*Dittmeyer v. Whetsel*, 91 F. App'x 111, 116-17 (10th Cir. 2004) (unpublished).

The Court assumes without deciding that the cup on the step was a "temporary adverse condition," which posed a "serious enough" "risk to health and safety." *Patterson v. Santini*, 749 F. App'x 695, 697 (10th Cir. 2018) (unpublished); *Dittmeyer*, 91 F. App'x at 116-17. After all, Plaintiff was injured from stepping on the cup. The cogent question is Defendant Backman's *subjective* state of mind when he placed the cup on the stair with the intent to "catch" a different inmate.

> The subjective component asks whether the prison official acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 297). The "deliberate indifference" subjective standard applies to claims of inhumane conditions of confinement. *Wilson*, 501 U.S. at 303-04. A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

*Custard v. Armijo*, No. 15-cv-448-REB-CBS, 2016 U.S. Dist. LEXIS 35339, at * (D. Colo. Feb. 10, 2016).

Thus, negligence and its language of foreseeability, reasonableness, and causation will not be enough to hold Defendant Backman liable. *See Verdecia*, 327 F.3d at 1177 ("[A] finding of unreasonableness is merely a finding of negligence and not deliberate indifference."). "Absent actual subjective awareness of the risk, [Defendant Backman] cannot be deliberately indifferent to the risk." *Id*. Deliberate indifference is characterized by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Oquendo v. Dep't of Corr.*, No. 3:16-cv-1709, 2018 U.S. Dist. LEXIS 30918, at *20 (D. Colo. Feb. 27, 2018) ("Deliberate indifference claims are governed by an approach consistent with recklessness in the criminal law, rather than a standard based on purpose of intent."). This is all to underscore that the subjective component of an Eighth Amendment claim "presents a high evidentiary hurdle to . . . [1983] plaintiffs." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). At most, the evidence Plaintiff has put forth would enable a jury to conclude that Defendant Backman recognized that Plaintiff "faced some unspecified risk of harm to his wellbeing," not that Defendant Backman "was aware he faced the type of substantial risk of serious harm necessary to establish deliberate indifference." *Marbury v. Warden*, No. 17-12589, 2019 U.S. App. LEXIS 26196, at *19 (11th Cir. Aug. 29, 2019).

Again, the totality of the undisputed facts regarding Defendant Backman's action and intent is as follows: He placed a cup on a step to "catch" another inmate. His intent was not even to involve Plaintiff. This scenario is like the one in *Cummings v. Smith*, No. 09-335, 2013 U.S. Dist. LEXIS 138199, at *4 (E.D. Pa. Sept. 25, 2013), in which the defendant, as a prank, "sprayed mace into another cell, and . . . mace then migrated through a vent to [the plaintiff's] cell." The Court in that case concluded, "From these allegations, it is simply too attenuated as a matter of law to conclude that Defendant could have been deliberately indifferent to a serious

risk of injury to *Plaintiff* or that Defendant acted 'maliciously and sadistically to cause harm.'" *Id*. at *4-5 (emphasis in original); *cf. Daniels v. Williams,* 474 U.S. 327, 332 (1986) (holding inmate who tripped over pillow negligently left on stairs cannot recover under § 1983).

This case is also not far off the facts of *Winrow v. Stell*, No. CIV-13-1144-D, 2015 U.S. Dist. LEXIS 74945 (W.D. Okla. June 10, 2105). There, "Plaintiff allege[d] that he tripped over a water jug placed on the stairs and injured himself as a result of falling down the stairs." *Id*. at *4. Plaintiff contended that Defendants "acted with deliberate indifference in that they 'knew that the plaintiff faced a substantial risk of serious harm with the Water Jug on the staircase but they disregarded that risk by failing to take reasonable measures to abate it.'" *Id*. at *9. Even so, in granting summary judgment for the defendants, the Court held that "Plaintiff's allegations are not readily distinguishable from a typical slip and fall negligence case involving a member of the general public." *Id*. (quotation marks and citation omitted); *cf. LeMaire v. Maas*, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding shackling dangerous inmate in shower with slippery floor does not violate Eighth Amendment); *Jones v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (holding slippery floors did "not state even an arguable claim for cruel and unusual punishment"); *Bolds v. Blackwood*, No. 4:13cv420, 2013 U.S. Dist. LEXIS 182209, at *4 (N. D. Fla. Oct. 21, 2013) (concluding no Eighth Amendment violation when Plaintiff tripped and injured on damaged sidewalk) (adopted rep't and recommendation); *Hanson v. Hightower*, No. 3-96-CV-1888-BD, 1997 U.S. Dist. LEXIS 24732, at *3 (N.D. Tex. July 28, 1997) (holding no § 1983 liability when defendants knew of puddle causing plaintiff to slip and be injured); *Tunstall v. Rowe*, 478 F. Supp. 87, 89 (N.D. Ill. 1979) (concluding injury from falling on greasy staircase "not cognizable as cruel and unusual punishment"); *Robinson v. Cuyler*, 511 F. Supp. 161, 163 (E.D. Pa. 1981)

9

(deciding slippery kitchen floor not cruel and unusual); *Snyder v. Blankenship*, 473 F. Supp. 1208, 1212 (W.D. Va. 1979) ("In scrutinizing petitioner's claim and the nature of the harm he suffered, this court is simply unable to find that petitioner has been a victim of barbarous, indecent, subhuman, or wanton treatment. This court does not intend to belittle petitioner's injury, for the results of only a minor slip and fall can be painful and debilitating; yet, the respondents' inaction in failing to repair a leaking dishwasher--regardless of whether such inaction might be characterized under state law as 'negligent' or even 'grossly negligent'--cannot be said as a matter of federal law to be conduct shocking to the conscience or repugnant to civilized standards of a maturing society.").

Likewise, the Court concludes here that, under the undisputed material facts, Plaintiff has not shown that Defendant Backman was deliberately indifferent toward him in leaving the cup on the step. The Court therefore grants summary judgment for Defendant Backman.

### III. INADEQUATE MEDICAL CARE

The claims here are based on Plaintiff's circumstances after he hurt his knee on December 18, 2014. During the following weeks, he sought treatment from Jail medical staff.

The defendants remaining here are Wilcox, Lewis and Lindley. Plaintiff accuses them of providing no medical treatment for his injured left knee. Plaintiff alleges that this deprivation has caused him ongoing physical symptoms of pain and decreased functionality.

#### A. Legal Standards

The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310

(10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide proper medical care, "a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Again, any Eighth Amendment claim must be evaluated under objective and subjective prongs: (1) "Was the deprivation sufficiently serious?" And, if so, (2) "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the objective prong, a medical need is "sufficiently serious . . .if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citations and quotation marks omitted).

The subjective prong requires Plaintiff to show that prison officials were consciously aware that he faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "'[I]nadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle*, 429 U.S. at 105–06). Further, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (stating disagreement with doctor's particular treatment method, without more, does not rise to level of Eighth Amendment violation). "'[W]here a doctor merely exercises his considered medical judgment,'" no deliberate

indifference exists. *Sparks*, 690 F. App'x at 604 (quoting *Self v. Crum*, 439 F.3d 1227, 1231-32 (10th Cir. 2006)).

## B. Undisputed Material Facts[1]

The Court set forth above the undisputed material facts as to the broader scenario of this case. However, the Court reiterates the specifics here as to these three individual defendants. This is to stress the Tenth Circuit's reminder of "the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls*, 718 F.3d at 1225.

### Defendant Wilcox

• During relevant time, Defendant Wilcox was medical doctor under contract to provide services at SLC Jail (Jail). (Doc. No. 68-3, at 2.)

• 4/20/15, Defendant Wilcox revoked Plaintiff's Tramadol prescription and gave him ibuprofen. No mention of left knee pain associated with this visit. (Doc. No. 31, at 10-11.)

### Defendant Lewis

• During relevant time, Defendant Lewis was a doctor who treated Plaintiff at Jail. (*Id*.)

• 1/2/15 - Plaintiff saw Defendant Lewis "who noted a limp & knee sprain but told Plaintiff he could not provide any medical care." (Doc. No. 31, at 8.) Defendant Lewis "ordered an x-ray which was unremarkable." (Doc. Nos. 68-3, at 2, & 69-2, at 3.) As requested by Plaintiff, Defendant Lewis gave him "pink slip for a bottom bunk/bottom tier until roll up." (Doc. No. 69-1, at 3, & 69-2, at 3.) Defendant Lewis noted Plaintiff already had prescriptions for ibuprofen and Neurontin for pain. (Doc. No. 69-1, at 3.) Defendant Lewis stated, "The patient can follow up as needed or if signs or symptoms persist, change or worsen." (Doc. No. 69-1, at 3.)

### Defendant Lindley

• During relevant time, Defendant Lindley was a doctor who treated Plaintiff at Jail. (*Id*.)

• 1/23/15 - Defendant Lindley saw Plaintiff for "chronic knee pain," agreeing to switch him "to tramadol and discontinue his ibuprofen." (Doc. No. 69-1, at 8.)

---

[1] The only facts set forth here regard those claims to which Plaintiff has affirmatively linked defendant(s). Any other allegations irrelevant to named defendants are not considered.

• 2/6/15 - Plaintiff was seen by Defendant Lindley, who prescribed Tramadol for pain. (Doc. Nos. 31, at 9, & 69-2, at 9.)

• 3/14/15 - Medical appointment with Defendant Lindley for chronic shoulder and ankle pain; tramadol dosage doubled. No mention of left knee pain at this visit. (Doc. No. 69-2, at 9, 38.)

### c. Applying Law to Facts

As to the allegations against Defendants Wilcox, Lewis, and Lindley, the Court concludes that they did not provide inadequate medical care. Based on the undisputed facts--supported by over four hundred pages of medical records and declarations that the Court has thoroughly reviewed--this Court cannot possibly term Defendants to be deliberately indifferent to Plaintiff's left-knee injury. To the contrary, Defendants each met with Plaintiff as requested. At each visit, active treatment of some kind took place--i.e., examinations were done; prescriptions were authorized and dispensed, both for medication and bottom-bunk clearance; and radiology tests were done. And this is only as to these three defendants. As an aside, Plaintiff's medical records included in the *Martinez* report show that he also received, for a variety of ailments, extensive treatment--virtually on demand--by other doctors, PAs, nurses, and mental health providers during that period and beyond, each leaving notes as to symptoms, observations, and treatments to be carried out.

Far from "deliberate indifference"--"the unnecessary and wanton infliction of pain"-- the record over many sick visits shows Defendants (and other medical providers) ensuring treatment for injuries and symptoms of all kinds *every time* Plaintiff asked. *Estelle*, 429 U.S. at 104 (quotation marks & citation omitted). It may not have been the exact medication or dosage or other treatment that Plaintiff wanted, but the medical care was uniformly adequate in that

Plaintiff's expressed need for help with pain and injury was consistently met by Defendants. Plaintiff disputes this, but his allegations are entirely unsupported.

Plaintiff's point really is that he, as an unqualified layperson, wanted more or different treatment from the medical professional defendants--not, as it must be shown to prevail, that Defendants, with full knowledge of the deleterious effects of their actions or inactions, outright ignored or even exacerbated Plaintiff's serious medical needs (assuming Plaintiff's needs were serious). *Id.* at 107 (stating that, when inmate contended "that more should have been done by way of diagnosis and treatment" and "suggest[ed] a number of options that were not pursued, that was "classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment"). As a matter of law, Defendants' treatment of Plaintiff, as it is set forth in undisputed evidentiary submissions, simply cannot be said to "offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

Plaintiff has not shown that these government defendants violated a constitutional right. The inadequate-medical-care claims against Defendants Wilcox, Lewis and Lindley are thus dismissed.

## CONCLUSION

The Court concludes that Defendant Gee was not affirmatively linked to a violation of Plaintiff's civil rights. The Court further concludes that Defendants Backman, Wilcox, Lewis, and Lindley were not deliberately indifferent toward Plaintiff.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. No. 34.) This action is dismissed in its entirety with prejudice.

Dated this 25th day of September, 2019.

BY THE COURT:

_____
JUDGE TED STEWART
United States District Court